ARCHER & GREINER
A Professional Corporation
One Centennial Square
Haddonfield, NJ  08033-0968
(856) 795-2121
Attorneys for Defendant, Protech Solutions, Inc.

By:  STEVEN J. FRAM, ESQUIRE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SABER SOLUTIONS, INC., | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 06-4922 (FLW) (TJB) |
| PROTECH SOLUTIONS, INC., | |
| Defendant. | |

### PROPOSED JURY CHARGES OF DEFENDANT, PROTECH SOLUTIONS, INC.

Defendant, Protect Solutions, Inc., respectfully requests

that the Court instruct the jury as follows during trial:

**PROPOSED JURY CHARGE NO. 1:   ISSUE - BREACH OF CONTRACT**[1]

The plaintiff in this case, Saber Solutions, Inc. ("Saber"), has asserted a claim of breach of contract against the defendant, Protech Solutions, Inc.

Saber claims that Protech breached a September 2005 Teaming Agreement between Protech and Covansys Corporation by failing to allocate the work under the contract to Covansys.

Saber has the burden of proving each of four essential propositions to prevail on its breach of contract claim:

First, that a contract existed between Saber and Protech;

Second, that the contract required Protech to perform or not to perform certain acts;

Third, that Saber was prepared to perform its obligations under the contract; and

Fourth, that Protech did not do what the contract required of it.

If you find that the Saber has proved each of these propositions, then you will be asked to consider the issue of whether Saber has established damages and the amount of those damages.  If, however, Saber has failed to prove any one or more of these propositions, then your verdict should be for Protech.

---

[1] Arkansas Practice Series, Model Jury Instructions - Civil, ("AMI") 2401

**PROPOSED JURY CHARGE NO. 2:   LEGAL STANDING OF SABER TO ASSERT
CLAIMS UNDER THE TEAMING AGREEMENT.[2]**

The parties do not dispute that Covansys Corporation
("Covansys") -- which is not a party to this case -- and Protech
entered into the Teaming Agreement on September 15, 2005 (which
I will refer to as the "September Agreement").

The first question you must decide is whether Saber --
which did not contract directly with Protech -- is entitled to
"stand in the shoes" of Covansys and assert rights under the
September Agreement.

Saber has alleged it is entitled to pursue a claim against
Protech by virtue of an assignment from Covansys of the
September 2005 Teaming Agreement between Covansys and Protech as
part of a larger transaction between Covansys and Saber.

In order to pursue this claim, Saber must demonstrate that
the assignment from Covansys to Saber was effective.  If you
determine that the assignment was not effective, you must find
that Saber does not have standing to bring this matter and you
must find in favor of Protech in this matter.

Let me explain an assignment to you.  An assignment is the
transfer of property or rights from one party to another.

---

[2] _Arkansas Practice Series, Model Jury Instructions - Civil_, AMI
2403

Unless qualified in some way, an assignment is the transfer of the whole interest or obligation.[3]

"An assignment extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee."  As a result of the assignment, the original owner of the obligation – the assignor – loses any rights to the obligation and the assignee then owns those rights.[4]  In other words, the assignee "stands in the shoes" of the assignor.

The first issue you must determine is whether Saber has demonstrated by a preponderance of the evidence that Covansys assigned the September Agreement to Saber.  As the plaintiff, Saber has the burden of proving that there was a valid assignment from Covansys.[5]

Saber contends that an Asset Purchase Agreement between Saber and Covansys identifies the assignment of the September Agreement from Covansys to Saber.  Protech contends that Saber has produced no documents reflecting the assignment of the September Agreement from Covansys to Saber.

---

[3] Restatement (Second) of Contracts § 317(1) (1981); 6 Am Jur. 2d Assignments § 1.

[4]  Etter v. Industrial Valley Bank & Trust Co., 515 A.2d 6, 9, (Pa. Super. 1986).

[5] Beal Bank, S.S.B. v. Thornton, 19 S.W. 3d 48, 51, 70 Ark. App. 336, 341 (Ark. App. 2000) (quoting 6 Am. Jur. 2d Assignments, § 191 (1999)).

To establish an assignment, Saber must demonstrate the delivery of the subject matter of the assignment with the intent to make an immediate transfer of all rights, title and interest from the assignor to the assignee.[6]  To be valid, an assignment must adequately describe or identify the property or things to be assigned.[7]

To constitute a sufficient written instrument constituting an assignment, while any language may be used to establish the intent of the assignor to transfer the subject matter, the language used must sufficiently identify the subject matter of the assignment.[8]

---

[6] Keller v. Bass Pro Shops, Inc., 15 F.3d 122, 125 (8th Cir. 1994).  See generally 6A C.J.S. Assignments, § 57 at 445-446 (providing there must be a present transfer of the assignor's right, which is so far complete as to deprive the assignor or his or her control over the subject of the assignment and the assignor must not retain any power of revocation.)

[7] Northwest National Bank v. Merrill Lynch, 757 S.W. 2d 182, 184 (Ark. App. 1988).  See also Watkins v. Hadamek, 892 S.W. 2d 515, 516 (Ark. App. 1994) (finding the subject matter of an assignment must be properly identified and must adequately describe or identify the thing to be assigned

[8] 6A C.J.S. Assignments, § 75 at 462-463.  See also Watkins, 892 S.W. 2d at 516.

**PROPOSED JURY CHARGE NO. 2:   EFFECTIVENESS OF ASSIGNMENT AS TO PROTECH.**[9]

If you find that Protech has established a valid assignment as between it and Covansys, you must then determine whether such attempted assignment violated the rights of Protech under the September Agreement's anti-assignment clause.  The September Agreement contained the following anti-assignment provision: "Neither party hereto shall assign or transfer any of its rights, privileges, or obligations hereunder without the prior written consent of the other party hereto."

While the rights and duties under a contract may be in certain circumstances assignable, contracts may not be assigned where the contract contains a non-assignment clause, where the assignment is forbidden by statute or violates public policy, where the contract is one for personal services or involves personal trust and confidence or where the assignment will materially change or increase a party's burdens and obligations under the contract.[10]

Consent to an assignment is necessary where the parties to the contract under which the right arises have stipulated that neither the contract nor any right under it are assignable

---

[9] Arkansas Practice Series, Model Jury Instructions - Civil, AMI 2403

[10] See generally 6A C.J.S. Assignments, § 32, § 34 at 415-418. See also Somerset Orthopedic Associates, P.A. v. Horizon Blue Cross and Blue Shield of New Jersey, 345 N.J. Super 410 (App. Div. 2001).

without the consent of the other party.[11]  Such non-assignment provisions are generally valid and effective restrictions of the right to assign.[12]

Thus, as a general rule, a contract is not assignable where the nature of the terms of the contract makes it not assignable unless the provision is waived.[13]  A prohibition on the assignment of contractual rights must be explicit, clear and unambiguous.[14]

A contract for personal services requiring the exercise of knowledge, judgment, or skill generally is not assignable unless the other party to the contract consents.[15]

A contract which places reliance for its performance in its integrity, credit or responsibility of a party, or reposes personal confidence or trust in him or her is generally not assignable.[16]  "Generally, a contract may not be assigned without the consent of the other to the contract where the provisions of the contract show that one of the parties reposes a personal confidence in the other in which he or should would have been unwilling to repose in any other person, that is, if the obligee

_____

[11] 6A C.J.S. Assignments, § 82 at 471.
[12] Id.
[13] 6A C.J.S. Assignments, § 34 at 417.
[14] Id. at § 34 at 417-418.
[15] 6A C.J.S. Assignments, § 40 at 423.
[16] 6A C.J.S. Assignments, § 42 at 426.

has relied on the obligor's honesty, skill, reputation, character, ability, wisdom or taste."[17]

In determining whether any agreement between Covansys and Saber to assign the rights and responsibilities of Covansys under the Teaming Agreement violated the anti-assignment clause, you should bear in mind that Teaming Agreement was part of a significant public contract and should consider the public policies of the State of New Jersey as they relate to public bidding.  Assignments violating statutes or which are contrary to public policy are invalid.[18]

The New Jersey Public Bidding statute, N.J.S.A. § 52:31-1 to 32-44, requires bidders to identify all proposed subcontractors and N.J.S.A. 40a:11-16 expressly prohibits the substitution of unnamed subcontractors.  These statutes prohibit bidders from substituting subcontractors after a bid award.[19]  I instruct you as a matter of law that the public policy of New Jersey prohibits the assignment of sub-contracts on public projects and that such assignments are only lawful if consented to by the contracting entity.

---

[17] Id. at § 42 (citing In re National Hydro-Vac Indus. Services, LLC, 262 B.R. 781 (Bankr. E.D. Ark. 2000)).
[18] 6A C.J.S. Assignments, § 69 at 459.
[19] Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 535 (App. Div. 1993); O'Shea v. New Jersey Schools Const. Corp., 388 N.J. Super. 312, 322 (App. Div. 2006).

If you determine if Covansys assigning the September Agreement to Saber would violate New Jersey public policy, you must find in favor of Protech.

It is undisputed that Protech never consented to the assignment of any rights to perform or claims from Covansys to any other party.  Protech contends that Covansys, in assigning the September agreement to Saber, breached the anti-assignment clause in Protech and Covansys' September Agreement and thus excused Protech's further performance under the contract.

If you conclude that the anti-assignment clause was a material -- or important -- provision of the Teaming Agreement, that the types of services that Covansys was called upon to provide were too personal of a character to permit assignment or that assignment of the agreement was inconsistent with the public policy of New Jersey, you should find that any assignment from Covansys to Saber was breach of the anti-assignment provision of the Teaming Agreement and ineffective as against Protech.[20]

An anticipatory breach of contract justifies the other party to treat the contract at an end and excuse his performance.[21]  Thus, if you find that Covansys committed an anticipatory breach of a material term of the September

---

[20] 6A C.J.S. Assignments, § 42 at 426.
[21] Stocker v. Hall, 269 Ark. 468, 472, 602 S.W. 2d 662, 665 (Ark. 1980)

Agreement by attempting to assign the September Agreement to
Saber, you must find that Protech was excused from performing
under the September Agreement and is not liable to Saber.

**PROPOSED JURY CHARGE NO. 4 - BREACH**[22]

If you find that the September Agreement was effectively and legally assigned from Covansys and Protech, you must then determine the remaining elements of Saber's breach of contract claim. That is, you must determine:  (1) what was required of Saber and Protech under the contract; (2) whether each party performed as expected under the terms of the contract; (3) if a party failed to perform as expected, was such failure a material breach; and (4) if the party did not perform, was that party's non-performance excused by the other party's first material breach of the contract.

The parties dispute whether Saber and Protech did what the contract required of them.  A party's failure to do what the contract required of him/her is a "breach" of the contract.

A "material breach" is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party.  A material breach excuses the performance of the other party (*and allows that party to sue for damages on the whole contract*).  A breach that is not material does not excuse the performance of the other party (*but does allow the party to seek damages for the partial breach*).

---

[22] *Arkansas Practice Series, Model Jury Instructions - Civil*, AMI 2427

A breach occurs when a party repudiates the contract before performance is due.  Repudiation may consist of a statement reasonably interpreted to mean that the party will not or cannot perform the contract.  It may also consist of a voluntary affirmative act that renders the party unable to perform.

Where a party is unable to perform, it cannot claim a breach if the other party subsequently declines to proceed with its performance.[23]  The party who first breaches a contract may not take advantage of a later breach by the other party.[24]

Here, Saber contends that Protech committed a material breach of the September Agreement by failing to allocate work to Saber under the September Agreement between Covansys and Protech and failing to enter into a subcontract with Covansys or Saber.

Protech contends Covansys anticipatorily breached the September Agreement and thus Protech was excused from further performance under the contract.  Protech contends Saber committed an anticipatory breach the September Agreement by: (1)  its refusal or inability to provide Arasu Dakshin to the Project; (2) its refusal or inability to provide key personnel to the Project; or (3) Covansys advising Protech in March 2006 that it did not intend to perform on the Project but instead assign its rights to perform to Saber.

---

[23] Stocker v. Hall, 602 S.W. 2d 662, 665-66 (Ark. 1980)
[24] Id.

**PROPOSED JURY CHARGE NO. 5:   CONTRACT INTERPRETATION - ORDINARY MEANING**[25]

To help you determine that the terms of the contract at issue,  I will give you some background on general contract principles.

You should give the words of a contract their plain, ordinary, and usual meaning, unless it is clear that certain words were intended to be used in a technical sense.

---

[25] Arkansas Practice Series, Model Jury Instructions - Civil, AMI 2413

**PROPOSED JURY CHARGE NO. 6:   CONTRACT INTERPRETATION - WORDS OR PHRASES OF A PARTICULAR TRADE OR OCCUPATION**[26]

You should interpret words or phrases associated with a particular trade or occupation as experienced and knowledgeable members of that trade or occupation use them, unless the evidence discloses that the parties used them in a different sense.

---

[26] Arkansas Practice Series, Model Jury Instructions - Civil, AMI 2414

**PROPOSED JURY CHARGE NO. 7:   CONTRACT INTERPRETATION - COURSE OF PERFORMANCE**[27]

You should give weight to the meaning placed on the language by the parties themselves, as shown by their statements, acts, or conduct after the contract was made.

---

[27] *Arkansas Practice Series, Model Jury Instructions - Civil*, AMI 2415

**PROPOSED JURY CHARGE NO. 8:   CONTRACT INTERPRETATION - LANGUAGE OF THE CONTRACT SHOULD BE INTERPRETED AS A WHOLE**[28]

A contract must be interpreted as a whole.  The different clauses of the contract must be read together and interpreted, if possible, so that all of the parts are consistent with each other.  An interpretation that fails to give effect to any provision of a contract cannot be adopted if the contract can be interpreted in a way that gives effect to all of its provisions.

---

[28] *Arkansas Practice Series, Model Jury Instructions - Civil*, AMI 2419

**PROPOSED JURY CHARGE NO. 9 : CONTRACT INTERPRETATION - GENERAL RULE - AMBIGUITY IN LANGUAGE**[29]

The parties dispute the meaning of the following language in their contract:

> At a minimum Covansys will provide the key
> personnel named in the proposal.  Covansys'
> resources will be provided at $64/hr.
> blended rate for all except Arasu Dakshin
> who will be at $147/hr…

It is your duty to interpret the contract to give effect to what the parties intended when they made their agreement.  In determining the meaning of the language, you must take into consideration the language of the contract, the circumstances surrounding the making of the contract, the subject of the contract, the purpose of the contract, the situation and relation of the parties at the time the contract was made, and the parties' subsequent course of performance.

---

[29] *Arkansas Practice Series, Model Jury Instructions - Civil*, AMI 2412

**PROPOSED JURY CHARGE NO. 10:   CONTRACT INTERPRETATION - CONTRACT COMPOSED OF MORE THAN ONE DOCUMENT**[30]

If the parties' contract is contained in more than one document, all of the documents must be considered together.  The different clauses of the documents that make up the contract must be read together and, if possible, interpreted so that all of their parts are consistent with each other.  An interpretation that fails to give effect to any provision of a contract cannot be adopted if the contract can be interpreted in a way that gives effect to all of its provisions.

Here, Protech contends the September Agreement must be read together with its Project Proposal to the New Jersey Department of Human Services.  In response to the New Jersey Department of Human Services' requirement that Protech provide "detailed resumes for each subcontractor's management, supervisory and other key personnel that demonstrate knowledge, ability and experience relevant to that part of the work that the subcontractor is designed to perform," Protech in its Proposal identified and provided resumes for Covansys employees Arasu Dakshin, Anasu Rangaro, Neeraj Pandey and Rob Phillips.  Protech contends these four specific Covansys employees were the "key personnel" identified in the September Agreement, which Covansys

---

[30] _Arkansas Practice Series, Model Jury Instructions - Civil_, AMI 2420

was required to provide to the Project under the September

Agreement.

**PROPOSED JURY CHARGE NO. 11:   CONTRACT INTERPRETATION -
CONSTRUCTION AGAINST ONE WHO DRAFTED CONTRACT**[31]

If you cannot decide the intention of the parties after
considering the instructions that I have already given you
concerning the interpretation of the ambiguous language in the
contract, then you should interpret the ambiguous language
against the party who prepared the contract.

The September Agreement provides: "At a minimum Covansys
will provide the key personnel named in the proposal.  Covansys'
resources will be provided at $64/hr. blended rate for all
except Arasu Dakshin who will be at $147/hr. ..."  The term key
personnel and who are identified as key personnel are disputed
among the parties.  Saber argues that only one Covansys employee
was named as "key personnel" in the proposal, Arasu Dakshin.
Protech argues that "key personnel" included four individuals,
Arasu Dakshin, Anasu Rangaro, Rob Phillips, and Neeraj Pandey.

In this case, the original contract was drafted by
Covansys.  As such, any vague or ambiguous language in the
September Agreement should be interpreted against Saber.  Thus,
you may find that "key personnel" included all four individuals,
Arasu Dakshin, Anasu Rangaro, Rob Phillips, and Neeraj Pandey.

---

[31] _Arkansas Practice Series, Model Jury Instructions - Civil_, AMI
2424

**PROPOSED JURY CHARGE NO. 12 - DEFENSE - ANTICIPATORY BREACH BY
FAILURE TO DELIVER ARUSA DAKSHIN TO THE PROJECT**

First, you must determine whether Covansys' disclosure that
it would not deliver Arasu Dakshin to perform on the project was
an anticipatory breach of a material term of the contract.  You
must determine whether Arasu Dakshin participation in the
project was material.  If so, and you find that Covansys failed
to provide him to the project, you must find that Saber
materially breached the September Agreement and Protech was
excused from further performance under the September Agreement.

**PROPOSED JURY CHARGE NO. 13 - DEFENSE - ANTICIPATORY BREACH BY FAILURE TO DELIVER KEY PERSONNEL TO THE PROJECT**

Second, you must determine whether Arasu Dakshin, Anasu Rangaro, Neeraj Pandey and Rob Phillips were "key personnel" described in the September Agreement and Protech's Proposal to the New Jersey Department of Human Services.  If you find that Arasu Dakshin, Anasu Rangaro, Neeraj Pandey and Rob Phillips were "key personnel" described in the September Agreement, you must then determine whether Covansys' disclosure that it would not deliver Arasu Dakshin, Anasu Rangaro, Neeraj Pandey and Rob Phillips as key personnel to perform on the project was an anticipatory breach of a material term of the contract.  If you find that this constituted an anticipatory breach of a material term of the contract by Covansys and Saber, you must find that Protech was excused from further performance under the September Agreement.

**PROPOSED JURY CHARGE NO. 14 - DEFENSE - FRAUD IN INDUCEMENT**[32]

Protech contends that Covansys fraudulently induced Protech to enter into the contract and has the burden of proving each of five essential propositions:

First, that Covansys made a false representation of material fact concerning the contract;

Second, that Covansys knew that the representation was false when it was made;

Third, that the representation was made for the purpose of inducing Protech to enter into the contract;

Fourth, that Protech justifiably relied upon the representation; and

Fifth, that Protech would not have entered into the contract except for the false representation.

A fact or statement is material if it was a substantial factor in influencing Protech's decision.  It is not necessary, however, that it be the paramount or decisive factor, but only one that a reasonable person would attach importance to it in making a decision.

Here, Protech contends that the September Agreement is void and unenforceable based upon fraud in the inducement in that Covansys intended to sell its public sector business and never

---

[32] Arkansas Practice Series, Model Jury Instructions - Civil, AMI 2433

intended to perform under the September Agreement if the
contract was awarded to Protech.  Protech contends that Covansys
made a false representation of material fact concerning
September Agreement in that it would act as a subcontractor on
the public bid contract.  Covansys knew that the representation
was false when it made it as Covansys had determined to sell its
public sector business prior to entering into the September 2005
Agreement with Protech.  In addition, Covansys falsely advised
Protech that key personnel would be made available for the
project.  Covansys made these representations for the purpose of
inducing Protech to enter into the September Agreement.  Protech
justifiably relied upon Covansys' representations and would not
have entered into the September Agreement except for the false
representations.

     If you find from the evidence in this case that Protech has
proven each of these propositions, then your verdict should be
for Protech.

## PROPOSED JURY CHARGE NO. 15 - DEFENSE - PROTECH'S PREVENTION OF PERFORMANCE[33]

Protech contends that Saber and Covansys prevented complete performance of the September Agreement by Protech and has the burden of proving this contention.

The failure of Protech to perform under the September Agreement is excused if its performance was prevented or hindered by the conduct of Saber and Covansys.  Protech contends that Saber and Covansys prevented its performance under the September Agreement by failure to make key personnel available for the Project and by Covansys' attempts to improperly assign the September Agreement to Saber.

If you find from the evidence in this case that this proposition has been proved, then your verdict should be for Protech.

---

[33] Arkansas Practice Series, Model Jury Instructions - Civil, AMI 2441

**PROPOSED JURY CHARGE NO. 16 - DAMAGES - GENERAL RULE**[34]

If you find that Saber is permitted to pursue claims under the Teaming Agreement, that it was prepared to perform and that Protech breached its responsibilities, you must then determine whether Saber was damaged by that breach and, if you find that it was damaged, the amount of money that will reasonably and fairly compensate it. In order to fairly compensate Saber, any award should put Saber in no better position than it would have been in if both Saber and Protech had performed all of their promises under the contract.

The only element of damages that Saber claims is the value of the net profits that it would have received it if had performed under the September Agreement.[35] Net profits are determined by subtracting the anticipated costs of performance from the anticipated revenues. Simply because a party would have received revenues does not mean it would have received profits for the simple reason that its costs of performance could have exceeded its revenues.

As the party seeking anticipated lost profits, Saber must establish that it was reasonably certain that it would have received profits if Protech had carried out its

---

[34] Arkansas Practice Series, Model Jury Instructions - Civil, AMI 2442

[35] Arkansas Practice Series, Model Jury Instructions - Civil, AMI 2206

responsibilities under the contract.[36]   A party seeking lost
profits under a contract must present a reasonably complete set
of figures to you and may not leave you to speculate as to
whether there would have been any profits.[37]

In considering whether Saber suffered any lost profits, you
should also consider what Saber did with its resources that
would have been devoted to the New Jersey Project, including
considering whether personnel who would have worked on the
Protech project were deployed on other projects at higher rates,
and whether Saber made more money utilizing these resources in
alternative fashions than it would have made under the September
Agreement.   If Saber did make more money, you may find that
Saber did not suffer any lost profits and was not damaged.

Whether this one element of damage, lost profits, has been
proven by the evidence is for you to determine.

---

[36] Little Rock WasteWater Utility v. Larry Moyer Trucking, Inc.,
902 S.W.2d 760, 766 (Ark. 1995); Quality Truck Equip. Co. v.
Layman, 912 S.W.2d 18, 20-21 (App.  Ark. 1995).
[37] Id.

**PROPOSED JURY CHARGE NO. 17 - DAMAGES - MITIGATATION OF DAMAGES**

If you find that Saber is entitled to a verdict on its breach of contract claim against Protech which I have explained to you and that Saber is entitled to damages, you must also determine if Saber made reasonable efforts to mitigate or minimize its damages.

Let me explain mitigation.  The law imposes upon a plaintiff, such as Saber, a duty to mitigate or minimize the damages it has suffered as a result of a breach of contract.[38] Stated another way, a party who suffers injury or damage because of a breach of contract can not recover damages resulting from the consequences it could have reasonably avoided by reasonable care, effort or expenditure.[39]  A party cannot recover damages for a loss that it could have avoided by reasonable efforts.[40]

In this regard, Protech bears the burden of proving by a preponderance of the credible evidence[41] either: (1) that Saber failed to employ reasonable efforts to re-deploy individuals who might have worked on the New Jersey Project to other projects, or (2) that the option to re-deploy individuals who might have

---

[38] Robert E. Kehoe, Jr., *Jury Instructions for Contract Cases*, § 9.32, at 956.  See also *Taylor v. George*, 212 S.W.3d 17, 24 (Ark. App. 2005).
[39] *Bill C. Harris Const. Co., Inc. v. Powers*, 554 S.W.2d 332, 336 (Ark. 1977).
[40] *Id.*
[41] *Id.*; Kehoe, § 9.32 (defendant bears burden of proving failure to mitigate).

worked on the New Jersey Project to other projects was reasonably available to Saber, but Saber failed to take advantage of the opportunity.  Here, Protech contends that Saber was able to mitigate its damages by re-deploying individuals who might have worked on the New Jersey Project to other projects at higher billing rates.  This re-deployment resulted in Saber obtaining greater profits that it would have received under the September Agreement, and thus Saber was able to mitigate all of its alleged damages.

If Protech proves to you that the re-deployment of individuals who might have worked on the New Jersey Project to other projects was reasonably available to Saber and Saber took advantage of this opportunity or failed to take advantage of this opportunity, you must consider the amount by which you must reduce Saber's alleged damages.  The law requires you, in fixing the amount of Saber's damages, to reduce Saber's award of damages by the amount of any loss that Saber could have prevented by exercising reasonable care and diligence when it learned of Protech's alleged breach (i.e., requesting to use another subcontractor instead of Covansys).[42]

---

[42] _Id._

Respectfully submitted,

ARCHER & GREINER
A Professional Corporation
Attorneys for Defendant
Protech Solutions, Inc.


By:   /s/ Steven J. Fram
      STEVEN J. FRAM


Dated:   February 16, 2010

5305872v1